**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**Unified Government of Wyandotte**
**County/Kansas City, Kansas,**

    **Plaintiff,**

**v.**              **Case No. 05-2436-JWL**

**Inland Quarries, LLC,**

    **Defendant.**

**MEMORANDUM AND ORDER**

Plaintiff filed suit against defendant in state court alleging that defendant's conduct causing the closing of a public road in Wyandotte County, Kansas constitutes a public nuisance. Thereafter, defendant removed the case to federal court on the basis of diversity jurisdiction. This matter is presently before the court on defendant's motion to stay and compel arbitration or, in the alternative, to dismiss (doc. #3). As set forth in more detail below, the court grants defendant's motion and directs the parties to proceed to arbitration on plaintiff's claim.

**I.  Background**

Plaintiff filed a state court petition in Wyandotte County, Kansas alleging defendant maintained or caused a public nuisance due to the collapse and subsequent closing of Upper Holiday Drive, a public road located in Wyandotte County, Kansas. By way of background, limestone mining has occurred in the Holiday Drive area since the 1920s. For years, some portions of the mined area were used as underground frozen-storage warehouses. When an

underground frozen-storage warehouse ceased operation in the 1990s, the subsequent thawing of rock structures resulted in subsidence, causing damage to the right of way under Upper Holiday Drive. Disputes concerning the liability and the nature and extent of the damages from past mining practices and frozen storage operations, including the cost of relocating and rebuilding Upper Holiday Drive, were addressed and settled pursuant to an Agreement and Release executed in 1999 by plaintiff, defendant and several other parties (hereinafter the "1999 Agreement"). Pursuant to the Agreement, defendant Inland, which had acquired title in 1986 to the land where Upper Holiday Drive is presently located, granted plaintiff a right-of-way over its land. The 1999 Agreement contains an arbitration provision where the parties agreed to submit to arbitration "any disagreements relating to or arising from any one or more of the provisions of this Agreement, including injunctive or equitable relief."

In its state court petition, plaintiff alleges that defendant's conduct causing the closing of Upper Holiday Drive constitutes a public nuisance. According to plaintiff, the collapse of Upper Holiday Drive was caused by subsurface "dome outs" (a cave-in of underground rock structure above a mined area) beneath and adjacent to the road. Plaintiff alleges that defendant had knowledge of and failed to remedy these subsurface problems and, thus, has maintained a public nuisance by allowing use of a public road to be impaired through the failure of the subjacent support.

## II.    Discussion

2

In its motion, defendant asserts that the court must stay the proceedings and compel arbitration consistent with the arbitration provision contained in the 1999 Agreement.  In support of its motion, defendant contends that the Agreement controls the rights and obligations of the the parties with respect to Upper Holiday Drive and, thus, plaintiff's claim clearly falls within the broad scope of the arbitration provision.  In response, plaintiff asserts that the FAA does not apply to this case and, should the court determine that the FAA does apply, that its claim falls outside the scope of the arbitration provision.  As explained below, the court concludes that the FAA properly governs the arbitration provision in the 1999 Agreement and that plaintiff's claim falls within the scope of the provision.  Thus, the court stays the proceedings in the case and directs the parties to arbitrate this dispute.

A.     *Does the FAA Apply to the Arbitration Provision Contained in the 1999 Agreement?*

The court first addresses, and rejects, plaintiff's argument that the FAA does not even apply in this case. The FAA applies to all arbitration agreements "involving commerce," 9 U.S.C. § 2, and "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131-32 (10th Cir. 2004) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *accord Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (FAA governs case when the contract containing the arbitration clause is a "contract evidencing a transaction involving commerce").  The requirement that the underlying transaction involve commerce "is to be broadly construed so as to be coextensive with

3

congressional power to regulate under the Commerce Clause." *Comanche Indian Tribe*, 391 F.3d at 1132 (quoting *Foster v. C.F. Turley, Jr.*, 808 F.2d 38, 40 (10th Cir. 1986)).  The Supreme Court has stated that the FAA's "involving commerce" requirement "reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967) (additional citations omitted).

In this case, plaintiff has its principal place of business in Kansas, while defendant is a limited liability company whose members are citizens of Delaware, New York, New Jersey, Texas and California.  In other words, defendant is not a citizen of Kansas.  The contract between the parties therefore relates to and affects interstate commerce.  *See id.* (contract was covered by the FAA because defendant had its principal place of business in Illinois and plaintiff is a federally-recognized Indian Tribe located in Oklahoma; thus, contract between the parties affected interstate commerce).  Moreover, the subject of the contract is the construction and maintenance of a public road in Wyandotte County, Kansas.  Public roads, without question, are channels or instrumentalities of interstate commerce.  As explained by the Supreme Court,

> Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail.  If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce.

*Overstreet v. North Shore Corp.*, 318 U.S. 125, 129 (1943); *see also United States v. Carolina*, 1995 WL 422862, at * (10th Cir. July 19, 1995) (stating in dicta that public roads are channels of interstate commerce).  It is undisputed that Upper Holiday Drive connects with Interstate 435

4

and, as such, is a link in the interstate transportation system.   For the foregoing reasons, the court readily concludes that the FAA applies to the arbitration provision contained in the 1999 Agreement executed by the parties.


B.     *Does Plaintiff's Claim Fall within the Scope of the Arbitration Provision?*

Having concluded that the FAA applies to the arbitration provision, the question becomes whether that arbitration provision is broad enough to include plaintiff's claim that defendant's conduct causing the closing of Upper Holiday Drive constitutes a public nuisance.   In that regard, plaintiff contends that the 1999 Agreement relates only to the construction of Upper Holiday Drive and that its public nuisance claim does not stem from any design or construction defect; rather, the claim stems from defendant's purported failure to remedy a subsurface defect (i.e., the lack of subjacent support due to "dome outs") of which it had knowledge.   Plaintiff also suggests that, by definition, its claim is not subject to the arbitration provision because the claim sounds in tort rather than contract and that the arbitral forum is inappropriate for the resolution of tort claims.

Where, as here, the parties dispute whether an arbitration provision in a concededly binding contract applies to a particular type of controversy, the question is for the court. *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).   The court first examines the scope of that agreement and then determines whether plaintiff's claim falls within its scope.   *Id.* (quoting *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)).   In

determining whether a particular dispute falls within the scope of an agreement's arbitration provision, the Tenth Circuit has advised district courts to undertake a three-part inquiry:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).

In this case, the parties agreed to arbitrate "any disagreements relating to or arising from any one or more of the provisions of this Agreement." The scope of the provision, then, is broad. *See id.* at 1262 (describing a "broad provision" as one that "refers all disputes arising out of a contract to arbitration"); *accord Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003) (describing broad provisions as those requiring arbitration of "all disputes arising out of or relating to the overall contract"). As stated by the Circuit in *Cummings*, then, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Cummings*, 404 F.3d at 1261. When a presumption of arbitrability exists, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and any

6

doubts "should be resolved in favor of coverage."   *Local 5-857 Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).   In fact, "in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (quoting *AT&T Techs.*, 475 U.S. at 650).

        With these legal principles in mind, the court readily concludes that plaintiff's claim is covered by the arbitration clause contained in the 1999 Agreement.   Section 2 of the Agreement addresses not only the construction of Upper Holiday Drive but also the maintenance of Upper Holiday Drive after completion and provides that plaintiff is responsible for maintenance of the road.   Section 2 further provides that defendant Inland shall "by Quit Claim Deed, in a form substantially similar to Exhibit C-1, gift the fee interest in an eighty (80) foot right-of-way to [plaintiff] with the center line of the realigned road being the center line of the eighty (80) foot right-of-way."   Exhibit C-1 to the Agreement specifically provides that the grantor of the right-of-way will not be liable for damages or injunctive relief "for vertical or lateral support or by reason of the driving of any such tunnels, passages or ways or anything that might occur in connection with or arising out of the removal of rock and of any and all minerals or the use of the space(s) created thereby."   Plaintiff's claim, then, that defendant had a duty to remedy a subsurface defect (or to provide subjacent support) clearly implicates the parties' rights and obligations under the 1999 Agreement, as plaintiff's duty to maintain the road and defendant's exception to liability for damages or injunctive relief for vertical or lateral support are both contemplated by the

Agreement.

Plaintiff urges that the Quit Claim Deed attached as Exhibit C-1 to the Agreement was never provided by defendant nor accepted by plaintiff and, thus, plaintiff never agreed to the language contained in that Quit Claim Deed and would not have agreed to such language. The question before the court, however, is not whether defendant should or should not be held liable to plaintiff or, stated another way, whether the language contained in Exhibit C-1 is binding on the parties. The question is only whether plaintiff's claim "implicates issues of contract construction or the parties' rights and obligations under it." *Cummings*, 404 F.3d at 1261. The parties specifically referenced Exhibit C-1 in the contract and attached the Quit Claim Deed to the contract. The court reasonably infers, then, that the issue of defendant's obligation to provide subjacent support was contemplated by the parties in executing the Agreement. Certainly, plaintiff's claim, at a minimum, "relates to" the provision of the Agreement whereby plaintiff assumes responsibility for the maintenance of the road and the provision of the Agreement referencing Exhibit C-1. In short, because the arbitration provision is susceptible of an interpretation that covers the asserted dispute and because there is simply no evidence of a purpose to exclude the claim from arbitration, arbitration is appropriate. *See Conoco*, 320 F.3d at 1126.

Finally, plaintiff suggests that a claim sounding in tort is, by definition, unrelated to any contractual agreement between the parties. There is no per se rule, however, that a tort-based claim can never be "related to" or "arise from" a contractual agreement. *See P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999). In fact, the Tenth Circuit has expressly held

8

that tort-based claims are arbitrable when the factual allegations underlying the claims, regardless of the legal causes of action asserted, "touch matters" covered by the contract.  *See id.*  Thus, the fact that plaintiff has asserted a tort claim against defendant is not dispositive of the arbitration issue.   The factual allegations underlying the public nuisance claim, as described above, clearly implicate matters contemplated by the contract.  As such, the claim is arbitrable.  *See id*. at 871-72 (affirming district court's decision that tort-based claims were related to parties' contract and were therefore arbitrable).

For the foregoing reasons, plaintiff's claim is arbitrable under the arbitration provision contained in the 1999 Agreement executed by the parties.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to  stay and compel arbitration (doc. #3) is granted and the parties are directed to proceed to arbitration on plaintiff's claims.   The court will stay the judicial proceedings in this case pending completion of the arbitration process.   Counsel for the parties are directed to report to the court in writing no later than June 12, 2006, concerning the status of that arbitration in the event that it has not been terminated earlier.   Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS SO ORDERED.**

Dated this 12th  day of December, 2005, at Kansas City, Kansas.

9

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge